Mr. McMillan, when you're ready. Good morning. My name is Adam McMillan. I represent LIGHTGUARD SYSTEMS LIGHTGUARD SYSTEMS LIGHTGUARD's patent covers an in-roadway warning light system that directs a beam of light towards oncoming traffic to warn the oncoming traffic that a pedestrian has entered the crosswalk. I will now list seven reasons why LIGHTGUARD did not disclaim the partially embedded embodiment. Seven reasons? Seven. Wow. No one told you you're supposed to only bring three to an oral argument, right? No. Before you go, let me ask you, are the accused products, are they partially embedded in the pavement? Yes, and the red brief indicates that. And your products are not? Do they sit on top of the, at least under the claim construction? In practice, the LIGHTGUARD product is partially embedded. So both products are partially embedded. So the first reason we did not disclaim is if you look at the first application of the patent, we indicate in Claim 1 that the embodiment in Claim 1 covers surface mounted and partially embedded all at the same time. So surface mounted is not mutually exclusive to partially embedded. Well, actually, the very first claim says, a plurality of surface mounted strobe lights partially embedded in said roadway. So it's not that you covered both surface mounted and partially embedded. You defined, it seems to me, these as being limited to partially embedded. Am I wrong? You think this would cover surface mounted that were not partially embedded? It says a surface, a plurality of surface mounted strobe lights partially embedded in said roadway. I think that claim is limited to partially embedded. I would agree that that would be the case in that instance, yes. Okay, well that's Claim 1, so from the original application. So next you go to when, the second point is when you go to the amendment. When we first amended the claim, LICAR distinguished itself from Takahashi only by saying Takahashi is flush because it's buried. I know, you did, and it is, and you're 100% right. But you struck the words partially embedded in, and instead put mounted on the surface of. And then as you go through, progressively, all the way through, you get worse and worse. So the problem is not what you had to give up. The problem is how one of the skilled in the art would read what you did give up. And one of the people that are skilled in the art, in fact, fought the vice and looked at our patent and said, the LICAR patent is partially embedded. And also, immediately after we made that amendment, when we took the partially embedded language out of the claim, the examiner, in the very immediate rejection after the amendment, said the LICAR patent is partially embedded. Or at least the claim still covers the partially embedded embodiment. And then you continued to make additional amendments to it to effectively remove that. No, I would respectfully disagree. The amendments that were made after the first amendment were to distinguish itself from OGLE. But look, a plurality of, look at the amendment you made, the August 28th amendment. I'll just go through them all in chronological order. It says you went from a plurality of signal heads mounted in the roadway to a plurality of signal head members mounted on the roadway. Well, in the roadway certainly would encompass partially embedded. But on the roadway, ooh, that doesn't sound partially embedded anymore. It sounds like you're on something. If I say you're sitting on the chair, you're not inside the chair. You're on top of the chair. And then as you keep moving from there to the next one, you actually take out at extending above the, and add across said roadway and above said roadway surface. That's where you add it. That's the last amendment dated July 19th of 2001. You add the words above the roadway surface. How can you say you're partially embedded in if you have to be above the roadway surface? After you take it out in, replaced it with on, and then said also above the roadway surface. Sure. If you look at the third amendment on JA1357, in there we say that we are above pavement, surface mounted, and partially embedded all at the same time. Which one is that? That's JA1357. Which amendment is that? Because above the surface... That's the third... Sometime between December of 99 and August of 2000, somewhere in there. Above the surface. When did that get added in? When did above the surface get added into the claim? I see. Above got added in in 98. Correct. On page 1357 in the summary of the invention, it says the inventive system includes a plurality of above pavement. Oh, I don't argue. Your specification clearly allows you to claim this. Right. The question is, did you? Yes, and even in re-examination after the patent was issued, the examiner looked at our patent and indicated that our patent still included the partially embedded embodiment. The third amendment starts with the summary of the invention saying this is an above pavement, surface mounted, partially embedded invention. In the third application... Excuse me. I think I'm calling it the third amendment. It's actually the third application. We added the above pavement words to distinguish from Takahashi, which is partially embedded. Excuse me. Distinguishing... It's flush. It's flush. It's not partially embedded, contrary to what the PTO wanted to say about it. The whole point is you look at the summary of the invention on the third application, then you look at claim one on the third application. Claim one in the third application says a plurality of signal heads mounted above the surface. That is in line with what we say in the summary of the invention from that point on where we say we're above pavement, surface mounted, and partially embedded. Again, in re-examination, the examiner looked at our patent and said this includes an embodiment that is partially embedded. As you pointed out, the specification, the abstract, continues throughout the entire prosecution history. Where is it that the examiner looked and said it's still partially embedded? Show me where that is. If you look at the order granting ex parte re-examination on JA 1586-7... The last paragraph on that page where it begins, for example, the next sentence after that... Or excuse me, the third sentence in that paragraph. Takahashi also teaches that the radiation surface of the luminous blocks, signal head members, may be projected from the surface, thereby suggesting that the luminous surface is not flush with the surface. While we disagree with the PTO regarding the characterization of Takahashi being able to be partially embedded in the roadway, this does indicate that the examiner looked at the Leichhardt patent and still believed that there was a partially embedded embodiment found within the Leichhardt patent. Okay, so now I'm going to ask a dumb question. I usually know this stuff much better than this, but this decision to accept the patent for re-exam, which of the multitude of claims that I have in front of me from your various applications, which one were they looking at? Which version? Which version of claims? What claim was it that this is written about? Because I just don't know from a date perspective. Sure, it's going off of the third amendment, which is found on page 15, or JA 1503. And in that claim, it says, a plurality of signal head members mounted on said roadway surface and extending at least some distance across said roadway and above said roadway surface to at least partially designate a pedestrian crosswalk. So it's the resulting claim language. Doesn't that kind of go against you? I mean, this clearly says the plurality of signal head members are mounted on the said roadway surface. I mean, and that's what you're stuck with. Well, no, because if you look at Takahashi, even the examiner said Takahashi is surface mounted, right, and partially embedded, which it's not. But you're asking us to make a claim construction on Takahashi. We're looking at what the district court construed. And they took the amendment, which I think was your last amendment. This is what you're stuck with. And it clearly says a plurality of signal head members mounted on said roadway surface on. It no longer says impartially embedded as it once did. But if I may, that's not all the claim says. It says extending at least some distance above, which infers that it can extend some distance below at the same time. Well, it can, but it can also just also infer or show that if you have it on, it continues on above. Well, there's no doubt that from the beginning, the novelty is that it has to be some distance above the surface in order to direct the beam of light towards oncoming traffic. Counsel, the claim says extending at least some distance across said roadway and above said roadway surface. Sure. The some distance is not modifying said roadway surface, but it's modifying across. Can I? Some distance across and above. Sure. And if you go to the fourth application immediately before the resulting claim, in that fourth application, we distinguished ourselves from Ogle. And that was why we added that additional across language in front of extending at least some distance above. So if you look at the claim in the fourth application on JA1445, the claim says a plurality of signal head members mounted on the roadway and extending at least some distance above the surface. Judge Raymond is exactly right when he pointed you to that language. Because it used to say extending at least some distance above the surface of. Right. And you changed it. You took out the extending at least some distance above the surface, which may still have implied partially embedded, and instead changed it to extending at least some distance across said roadway surface and above said roadway surface. I don't think that you can read the prosecution history to come to that conclusion. Because what happened is we said extending at least some distance above, the examiner rejected that language and said, well, we still have Ogle. Ogle is an invention where the light emitters are on poles that are 12 to 18 inches high on the side of the road, basically on the sidewalk. And what we were saying is we're in the road. We're not on the side of the road. We can't place the emitters of Ogle in the road because they would block traffic because they're 12 to 18 inches high. And the examiner rejected our claim still. So what we said is, okay, we extend at least some distance above, but we also extend at least some distance across. You're saying that some distance modifies both above and across. Correct. Especially when you read the fourth application, which specifically says that. It says mounted on the roadway and extending. If you have your light sitting on top on the roadway surface, then it meets that modification. It's above. It's at least some distance above. Yes, I think the light guard patent covers an entirely on and above, but the preferred embodiment is partially embedded. So the partially embedded embodiment is at least some distance above the surface of the roadway so that it can direct that beam of light towards oncoming traffic. That's the novelty is that it's directing the beam of light. You're way into your rebuttal time, so I'm going to have to stop you. But I want to ask you one more question before you go down, which is one activation means, and I don't want to get into the substance of it, but I want to ask you, if I were to conclude you were correct in your appeal, the district court has activation means wrongly construed, does that warrant a reversal here? And I guess the reason I ask is all of their products are partially embedded. And if we don't agree with you on partially embedded, this case is over. Summary judgment or the stipulation of non-infringement still stands, correct? Correct. Okay, so activation means is a second thing that you have to be able to win on in order to go back below. You have to win on both points. He only has to win on one. Well, no, not necessarily. I guess I should correct myself. We could still go back to the district court if we lost on the activation means. Oh, if you lost on activation means, you could go back to district court, but if you lose on partially embedded, you're dead in the water. I believe so because they had a flush mount device. They were partially embedded at first, then we alerted them, then they went to flush mount, then they went back. Thank you. Let's hear from Mr. Heminger. You just answered that procedural question for me as you begin to. If you win on partially embedded but lose on activation means the stipulation is still in effect and you don't have to – his time should be going. So the stipulation is still in effect, right? I mean, this is over. Correct, Your Honor. Do you agree with your opponent that we're to accord some special authority to append examiner's views? I think under the doctrine of prosecution history disclaimer, we do have to take into account what happened during the prosecution. And in fact, I think we do need to take into account what the examiner said about the claims at issue here. And if there's an inconsistency between the written amendment versus statements by the examiner? Well, I guess I don't know how to answer that because that is not the case of any part of this prosecution history that I'm aware of. Counsel for Lifeguard pointed to the granting of their request for reexamination view of Takahashi because they made certain amendments, added new matter to the specification and never recited Takahashi. One of the infringers said, hey, you didn't cite Takahashi. So they said, we think you ought to review this. The examiner said, sure, I'll review it. And he did note that Takahashi has the flush and the partially embedded. I think what is particularly instructed, though, is the examiner's language for allowing the claims to stand. And that's at JA-1601. And in allowing the claim at issue here, the examiner said Takahashi's luminous block is buried in a road surface so that its radiating surface is flush with the road surface. In contrast, the claim requires that signal head, this is talking the claim at issue, the signal head members be mounted on the roadway surface and above the roadway surface. And the emphasis is the examiner's. The examiner clearly understood that this book is mounted on the surface of the podium, extends some distance across the podium, and in fact is above. An interesting point of the argument by Lightgard is that they say the claim should extend to partially embedded. Yet when you look at their claim construction, they don't use the term partially embedded at all in the claims, in their claim construction. All they say is, well, I think it should be extending at least some distance above. They then want to say that means it extends some distance below. But they didn't. They gave that up. When they put those words in the claim, it was rejected. And quite frankly, the only place partially embedded appears in the file history is in that original claim and the specification when they carried it on through. What about the re-exam where he points us to where the decision that there's a substantial question of patentability seems to hinge on the examiner's belief that Takahashi disclosed partially embedded. And at that point, the examiner, I mean, that wouldn't matter if they didn't cover partially embedded. So obviously in re-exam at that point, as he points out, the examiner was of the belief that the claim language included partially embedded. Well, perhaps. I don't read that that way. And I don't think one skilled in the art would read it that way. What he was doing was describing Takahashi. The real question was whether or not a reference that was cited earlier in the history needed to be considered again. And he said yes. He was just describing Takahashi, which it does that. But even if the examiner, when he went back and read it and thought that, his conclusion at the end, that the claim was limited to mounted on the roadway surface and above the roadway surface, that precludes that. So the issue on the, if you will, the prosecution disclaimer is, in our view, relatively clear. All of the cases they cited, one of them Judge Wallach's 01 communique case, that it has to be clear and unequivocal. And they cite a whole host of cases. All of those dealt with the argument prosecution history estoppel or disclaimer, not the amendment. And they never once touched the amendment issue. And here it's unequivocal based upon the cases dealing with prosecution disclaimer. And in fact, the Festo case, the Supreme Court case, spoke on this. And this court in Omega said, the standards for the doctrine of equivalence discussed in Festo apply equally well to the amendment-based estoppel. And made it very clear that we're not entitled to go back and get what was given up. And in particular, at page 734 of Festo, the court said, a rejection indicates that the patent examiner does not believe the original claim could be patented. While the patentee has the right to appeal, which they didn't do here, and they never once again injected partially embedded into the claims, the patentee's decision, Lightguard's decision, to forego an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim. So what we have here is a situation where they're asking for a construction of a construction that, if it were allowed, would cover the partially embedded which they gave up. The other arguments that they made, for example, the one appearing in their reply, which was made here, in an effort to say that there is extrinsic evidence supporting the reading of the claim to mean that mounted on extends some distance below, they cite to a Spot Devices patent. And in his argument, Lightguard's counsel said Spot Devices read that as being partially embedded. It didn't. And if you look at footnote 5 of the reply brief, they quote the language. It says, U.S. patent number 742 teaches a lighting system mounted to a road surface. Doesn't use partially embedded. The lighting system protrudes above the surface a sufficient distance to provide visible light. Nowhere does it say partially embedded. And I wrote that, and I know it doesn't mean that. The other argument presented about excluding the preferred embodiment, as Your Honor Moore has indicated in the August Technology case, the mere fact that a preferred embodiment is not covered is not the end all and be all. In fact, as long as the claim covers one of many embodiments, we're fine. And that's at pages 1285 and 1286 of the August Technology case. There are instances where a claim should not be construed to exclude the preferred embodiment, but that's when that's the only embodiment. And again, Judge Moore, in the case dealing with aspect, Adams versus Parego, I apologize, Your Honor. In that case, it dealt with whether the FDA limitation in the prosecution history should also cover what was excluded here, and there was an expert report. And the court decided that the claim construction offered by the infringer was wrong because it excluded all of the embodiments because the drug was only absorbed in the intestine. But that is not the case here. And in fact, in the patent, the term partially embedded only appears twice in the abstract and in that one paragraph that was referred to. And that language in the one paragraph in the summary was in the original claim, which was rejected over Takahashi. The other limitation that I'd like to talk about is the limitation of the light source adapted to direct a beam of light. The limitation here is about the light source being adapted to direct a beam of light from said roadway surface. The argument posed by Lightguard is the argument dealing with the light beam. Well, the light beam could be adapted. Perhaps it can, but the claim says the light source is adapted to do two things, direct it to vehicle traffic and to have it adjacent to and generally parallel to the roadway surface. What about the activation? I'm sorry? What about the activation means? The activation means? The district court construed it only in one way, and it looks like the specification does it two ways. The district court took the places in the specification where there was the structure described for activation means and went through and pointed out every place and everywhere it talks about you have to have it discloses switch on each side. And the reason you need that because... Nobody's disputing that it's a switch, it's the pole. Well, that was... As opposed to proximity. Uh-huh. And, well, no, the proximity could be mounted on a pole as well. And so the issue of it being mounted on the pole, what Section 112 covers is a structure that performs the function and what's described in the specification. And that is described. Now, doesn't the specification disclose proximity switches that are not pole mounted? I don't believe so. What about Column 2, Line 3? The lights are activated by the pedestrian either by manual switch or by sensor before he or she enters the crosswalk. It doesn't say anything about having to be mounted on a pole. It's a switch, manual switch or a sensor. Either one of those two things are the activation means. Yes, those two are. And then you look at how you accomplish that. And that is accomplished by mounting them on poles. The 112 doesn't limit... It could be mounted on a post or it could be mounted close to the surface of the road. But that's not the structure that is disclosed. What you're arguing are equivalent. Judge Rayna and Judge Wallach are both right. I mean, look at Line 19. The switches can be mechanically pole-mounted design or proximity-activated switches, infrared sensors, or any other type of activation device. How in the world is it proper to limit this to only the mounted-on-a-pole kind? I think under 112, when we talk about the corresponding structure, we take all the structure that is in... And you get all of them or equivalents thereof. Exactly. There are multiple alternative structures here. So why was this district court proper to limit him to only one? Well, quite frankly, I think if you look at the argument, the only argument that has been presented by Light Guard is that we just need a switch. They did not cover the aspect on both sides of the roadway. And it was on that basis that the judge rejected their argument because... I understood them to argue at all times that the activation means, as disclosed in the patent, is a switch. If you look at their claim construction, no. They say a switch. Right. You have to have it on both sides, though, Your Honor. You cannot have it on a single side because then it will not perform the function. Fine, then it's a switch on both sides. But where does the pole come into play? I hang my hat on a hat rack. That doesn't make it part of the hat. That is not what they proposed. They didn't say we want a switch on either side and the issue... But suppose a court had said mount it on hot air balloons on either side of the road. I mean, wouldn't that be incorporating structure that's well beyond that necessary to perform the function? Well... Decided by the claim. I mean, I understand the analogy you're trying to make. But, again, when you look at the structure as to where and how to mount the switches, how to accomplish this, it certainly accomplishes the function. And the function says when a pedestrian enters the walkway, that's from the right side or the left side. I kind of think just in terms of practical terms or about my garage. It's got this sensor down at floor level that senses when something walks past it or, you know, my foot will activate it. That doesn't have to be mounted on a pole. It doesn't have to be mounted up on the roof or the ceiling of the garage. I agree. And that to me would be an equivalent structuring... Well, isn't that incorporating structure that's not necessary to perform the claim function? I believe that the structure in the specification that they described as performing that function are the pole-mounted switches or sensors on either side. The arguments you pose are, is that equivalent structure or not? Which also falls within the scope of Section 112 with regard to the means plus function. Okay. Why don't we give Mr. McMillan his rebuttal time. Thank you, Your Honor. We'll give him three minutes. Thank you. So, as I said, there are seven reasons why the prosecution history... Yeah, I'm not sure. Yeah, it's all found in the briefs. But the main issue is after we made that first amendment where we took out the partially embedded language, immediately thereafter the patent examiner looked at the patent and said it's still partially embedded and rejected Claim 1. We went on to further distinguish ourselves from Takahashi and... Where did he say it's still partially embedded? Correct. Is that the 1586? That's in the re-exam. Well, no. If you look at the third rejection. I'll page this up. That is JA 1330. So, in the first amendment, we said please cancel Claims 1 through 7. And so, Claim 1 became Claim 8. And in the third rejection, the examiner said Claims 8, 10, 11, and 14 are rejected. With respect to Claim 8, Takahashi discloses a pedestrian crosswalk signal apparatus comprising a plurality of surface-mounted lights partially embedded in the roadway. So, there's a clear indication by the examiner that even though we took out partially embedded from the claim... No, this is an obviousness rejection. Which the first two rejections were also obvious rejections. He's describing Takahashi. Right. Right. And that's what it did in the first two. I mean, this rejection is the exact same rejection that happened in the first two rejections. After the second rejection, we amended the claim and took partially embedded out. Even after we took out that language... Takahashi remains the same. Takahashi remains the same. And the examiner looks at the patent and says Claim 8 is not patentable over Takahashi because Takahashi is surface-mounted and partially embedded. Which clearly indicates the examiner still looked at the exact same claim. And in that claim, it only said surface-mounted. There was no other defining language. So, even though we took out partially embedded, we still said we're surface-mounted. The specification still had the preferred embodiment that was partially embedded. And the examiner in the third rejection on JA 1330 said, you're still partially embedded, so we reject you over Takahashi. And then we have the remaining ongoing negotiation with the patent office. And as explained before, SPOT, our competitor, said that the lighting system protrudes above the surface. That indicates that it's coming from at least some distance below the surface. Are there any other cases involving this patent? No. This is it? This is it. Final thought? Final thought is that we did not disclaim the partially embedded embodiment. Thank you. That concludes counsel for their arguments. The case is submitted. All rise.